## Commonwealth v. Chappell

*Paul D. Larimer,* Assistant District Attorney, for Commonwealth.

*Donald J. Perry,* for defendant.

GRIFFITH, J., September 24, 1955.—Defendant was indicted under section 854 of The Penal Code of June

24, 1939, P. L. 872, 18 PS §4854, which reads in part as follows:

"Whoever, with intent to defraud, makes, . . . any check . . . upon any bank . . . knowing, at the time of such making, . . . that the maker . . . has not sufficient funds in, or credit with such bank, . . . for the payment of such check, although no express representation is made in reference thereto, is guilty of a misdemeanor. . . .

"In any prosecution under this section, the making . . . of a check, . . . payment of which is refused by the drawee because of lack of funds or credit, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank, . . . unless such maker or drawer shall have paid the drawee thereof the amount due thereon, together with interest and protest fees, within ten (10) days after receiving notice that such check . . . has not been paid to the drawee."

Defendant was tried and convicted under the above act by reason of a check drawn by her to Leo E. O'Leary on December 13, 1954, in the sum of $2,100.04. Prior to December 2, 1954, defendant had purchased several truck loads of chickens from O'Leary and his employer, Yahner, and at the time of each sale defendant, or her employe, gave O'Leary a written statement as to the weights of the chickens which were then taken by defendant or her employe to Sky Brothers in Altoona where they were sold and, upon receipt of Sky Brothers' check, defendant mailed a check for the truck load of chickens to O'Leary.

On December 2, 1954, a similar occurrence took place. Mrs. Chappell's daughter called at the O'Leary farm with defendant's truck, picked up a truck load of chickens and gave O'Leary a weigh slip setting forth the number of pounds and the price to be paid per pound. On December 13, 1954, defendant received a

check from Sky Brothers in payment of the load of chickens purchased by her from O'Leary and on the same date she drew her check to O'Leary in the amount of $2,100.04, representing payment for the chickens delivered on December 2, 1954. O'Leary testified that he received this check on the 14th or 15th of December, gave the same to Yahner who deposited it in the First National Bank of Patton some time later, which in due course sent the check to the First National Bank of Ebensburg on which it was drawn and which the latter bank returned to the First National Bank of Patton marked "insufficient funds" some time after December 20, 1954. Defendant's account in the First National Bank of Ebensburg was closed by the bank on December 24, 1954, because by that time there were insufficient funds in her account to honor the checks which were being presented for payment.

At the trial defendant demurred to the evidence and now moves for the discharge of defendant.

There is not sufficient evidence to sustain the conviction.

The act under which defendant was indicted and tried requires the Commonwealth to establish the following elements in order to constitute the offense:

1. An intent to defraud.

2. A making.

3. Knowledge at the time of the making that the maker had insufficient funds in or credit with the drawee bank.

There is no doubt but that defendant made the check in question on December 13, 1954. The other elements we believe are lacking. Under the provisions of the second section of the act, the Commonwealth established a prima facie case of intent to defraud and of knowledge of insufficient funds by showing that defendant did not pay the amount of the check within 10 days after receiving the required notice. The Com-

monwealth's prima facie case, however, was negatived by the testimony. The records of the First National Bank of Ebensburg which were introduced in evidence show that on December 13, 1954, the date defendant drew the check in question, she made a deposit to her account in the sum of $2,808.29, that two checks were presented against her account on that date, one in the sum of $100 and one in the sum of $22, and that her balance after these transactions was then $5,-929.34. Moreover, on December 20, she deposited the additional sum of $3,471.60 and at no time between the 13th and the 20th of December did she have a balance of less than $5,133.93. In view of this undisputed testimony, how can it be said that on December 13, 1954, defendant drew her check "with intent to defraud" and "knowing, at the time of such making . . . that the maker . . . has not sufficient funds in . . . such bank"?

We believe that this testimony thoroughly negatives any intent to defraud and also negatives any knowledge that at the time of the making of the check defendant knew that she had insufficient funds in the bank to pay the check when presented. It is true that at the time of the trial in June 1955, defendant admitted that she then had between $18,000 and $20,000 worth of outstanding checks which were unpaid, but this is not a circumstance from which the jury could find that she knew on December 13, 1954, at the time she drew the check to the order of O'Leary, that she had insufficient funds in the bank to pay the same.

Whether a prosecution may successfully be maintained under the provisions of section 854 of The Penal Code of June 24, 1939, in any case where a check is given for the payment of a preëxisting debt need not here be determined for the reasons above given. It may be that if a check were given for a preëxisting debt, but for the purpose of obtaining new

credit, it would be a violation of the Act of 1939. See Commonwealth v. Banonis, 30 Schuyl. 1. In that case, however, the testimony clearly showed that defendant knew that there were no funds in the bank to meet the check which he gave and he, himself, testified that "he gave the check for the old balance so as to get new credit" and "got credit as long as the checks were given". The situation here is not similar to that in Commonwealth v. Heller, 33 Dauph. 407, where a conviction was sustained where the evidence was that there were outstanding checks which defendant knew at the time the check in question was given would reduce his balance below the amount of the disputed check although there was a sufficient balance to meet this check at the time it was issued, because in that case defendant at no subsequent time had sufficient funds to meet the check drawn. Here defendant had a daily balance of more than double the amount of the check for at least a week after it was given.

We are satisfied that the Commonwealth's prima facie case, which was made out by showing that defendant's check was not paid within 10 days after notice, has been conclusively negatived by the undisputed testimony and that, as a result, there was insufficient evidence to sustain the conviction.

We therefore, enter the following

### Decree

And now, September 24, 1955, after argument, and upon due consideration, it is hereby ordered and decreed that defendant's motion in arrest of judgment be sustained, that defendant be discharged and that the costs be placed upon the county.

### Exception

To all of which counsel for Commonwealth excepts and prays that an exception be noted and bill sealed; all of which is, the day and year aforesaid, accordingly done.